UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

**CHRISTINA BENNANI-PERSECHINI,**
Plaintiff,

v.

**GOLDMAN SACHS BANK USA,**
Defendant.

---

Civil Action No. ___________

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

---

## I. INTRODUCTION

Plaintiff Christina Bennani-Persechini brings this action against Goldman Sachs Bank USA ("Goldman" or "Defendant") for willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., arising from Goldman's inaccurate credit reporting, failure to conduct a reasonable investigation, and deliberate reversal of a prior written admission of error.

Goldman's conduct is particularly egregious because: (1) Goldman admitted in writing on the federal CFPB complaint portal that it had erroneously reported a co-owner's Chapter 7 bankruptcy on Plaintiff's individual credit profile and committed to correcting it; (2) Goldman failed to make that correction for over eight months; and (3) on March 2, 2026, Goldman affirmatively reversed its prior finding and declared the same reporting it previously acknowledged as erroneous to be "correct." This reversal, made with full knowledge of Goldman's prior written admission, constitutes willful noncompliance under FCRA § 1681n. Goldman's post-reversal reporting has caused active and ongoing financial harm, including a credit denial from Citi on May 3, 2026, based directly on the inaccurate Experian data Goldman continues to furnish.

This conduct also implicates the CFPB's October 23, 2024 Consent Order against Goldman (File No. 2024-CFPB-0011), which found systemic failures in Goldman's dispute resolution and adverse credit reporting practices. Goldman's post-Consent Order conduct toward Plaintiff is consistent with — and may itself constitute a violation of — the obligations imposed by that Order.

Furthermore, Goldman's deliberate failure to pay the $600 arbitration filing fee required by AAA Consumer Rule R-10(b) — despite retaining outside litigation counsel and making a settlement overture to Plaintiff on the same day the payment demand was issued — reflects a pattern of bad faith that this Court should consider in evaluating willfulness.

## II. PARTIES

Plaintiff Christina Bennani-Persechini is a natural person and "consumer" as defined by FCRA § 1681a(c). She resides at 195A Mill Street, Groton, Massachusetts 01450, and was a co-owner of an Apple Card account issued by Goldman Sachs Bank USA.

Defendant Goldman Sachs Bank USA is a federally chartered bank headquartered in New York, with its consumer credit card operations in Salt Lake City, Utah. Goldman issues Apple Card pursuant to an agreement with Apple Inc. and acts as the furnisher of credit information to Consumer Reporting Agencies ("CRAs") regarding Apple Card accounts. Goldman is a "furnisher" under FCRA § 1681s-2 and a "covered person" under the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5481(6).

## III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1681p, which provides that actions under the FCRA may be brought in any appropriate United States district court.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, and a substantial part of the events giving rise to this action occurred in this District, including the receipt of adverse credit decisions and financial harm suffered by Plaintiff.

Plaintiff previously initiated arbitration proceedings against Goldman through the American Arbitration Association (AAA Case No. 01-26-0001-2175) pursuant to the mandatory arbitration clause in her Apple Card Customer Agreement. The AAA administratively closed the case on May 20, 2026 after Goldman failed to pay the required $600 filing fee by the May 9, 2026 deadline, in violation of AAA Consumer Rule R-10(b). Goldman's non-payment of the arbitration filing fee, despite having retained outside litigation counsel (Morgan Lewis & Bockius LLP) and made a settlement overture to Plaintiff on the same date the payment demand was issued (April 9, 2026), constitutes a waiver of any arbitration defense Goldman might otherwise assert. Plaintiff is therefore free to pursue her claims in this Court.

## IV. FACTUAL BACKGROUND

### A. The Account and the Erroneous Reporting

On August 28, 2021, Plaintiff opened an Apple Card account as a co-owner with another individual ("Co-Owner"). The account was managed through Apple's Wallet application, with Goldman serving as the issuing bank and furnisher of credit information.

On October 11, 2023, Goldman received notification that the Co-Owner had filed for Chapter 7 bankruptcy. Without conducting a reasonable investigation into Plaintiff's separate status and liability, Goldman reported the charge-off and bankruptcy status of the account against Plaintiff's individual credit profile — despite the fact that Plaintiff had not filed for bankruptcy and was not responsible for the Co-Owner's bankruptcy filing.

As a direct result of Goldman's inaccurate reporting:

- Plaintiff's Experian FICO Score 8 dropped 64 points — from 762 (Very Good) to 698 (Good) — as reflected in credit monitoring data from April 23, 2025 to May 23, 2025.
- A "Major Derogatory Account Alert" appeared on Plaintiff's credit monitoring profile on May 10, 2025, identifying the lender as "APPLE CARD/GS BANK USA" with a date of April 30, 2025.
- The derogatory item was reported to all three major CRAs: TransUnion, Experian, and Equifax.

**B. Plaintiff's Disputes and Goldman's July 2025 Written Admission**

In May 2025, Plaintiff submitted a formal billing dispute regarding the Apple Card reporting via Priority Mail with signature confirmation and tracking — delivery of which was confirmed. Goldman failed to send a written mailed response as required by FCRA, instead responding solely by email on June 23, 2025, stating that the reporting was correct, without supporting documentation or explanation of findings.

Plaintiff then filed a formal complaint with the Consumer Financial Protection Bureau on June 23, 2025 (CFPB Complaint No. 250623-21767505). Goldman responded to the CFPB on July 9, 2025 with a written admission that constitutes a critical admission against interest. Goldman's response stated, in relevant part:

*"[D]uring the investigation the Bank confirmed that the charge off and Bankruptcy status of the account was reported on the Customer's credit profile, alongside the account Co-Owner's. The Bank submitted a request to Credit Reporting Agencies to remove the Customer as an account owner. The Customer should allow up to 30 days for the updates to reflect on their credit report... The Customer is not responsible for the balance on the account."*

This written statement, submitted on the federal CFPB complaint portal, constitutes Goldman's formal acknowledgment that: (1) an error occurred; (2) Plaintiff's credit was incorrectly impacted by the Co-Owner's bankruptcy; and (3) Goldman had committed to correcting the reporting within 30 days. Goldman characterized its response as "Closed with nonmonetary relief."

**C. Goldman's Failure to Correct and the March 2026 Reversal**

Goldman failed to correct Plaintiff's credit reports within the promised 30-day window following July 9, 2025. The derogatory reporting remained on Plaintiff's credit profile.

On February 7, 2026, Plaintiff sent a certified letter to Goldman's Philadelphia lockbox address memorializing Plaintiff's intent to file arbitration and demanding correction of the credit reporting. USPS tracking confirms this letter was delivered on February 7, 2026.

On February 9, 2026, Plaintiff submitted another formal credit bureau dispute regarding the Apple Card reporting.

On March 2, 2026 — more than seven months after Goldman's written admission of error — Goldman sent Plaintiff an email from Apple Card Support with the subject line "Outcome of your Apple Card Credit Bureau Dispute," which stated:

*"Your dispute has been investigated. You contacted us on 02/09/2026 regarding the reported Account information associated with your Apple Card reported by Goldman Sachs Bank USA to TransUnion, Experian and Equifax. We have reviewed the information being disputed, as well as our records, and determined that the disputed Account information was reported correctly."*

This March 2, 2026 determination directly contradicts Goldman's July 9, 2025 CFPB admission. Goldman, with full knowledge of its prior finding, reversed its position and declared the same reporting it previously acknowledged as erroneous to now be "correct." This is not a reasonable investigation — it is a repudiation of a prior written admission, constituting willful noncompliance under FCRA.

**D. Ongoing and Continuing Harm**

Goldman's inaccurate reporting has caused ongoing, documented financial harm:

- On August 23, 2025, Upgrade reduced Plaintiff's credit limit to $1,000 and eliminated cash transfer eligibility, expressly citing "changes in your credit profile" — occurring approximately three months after Goldman's derogatory reporting first appeared.
- On May 3, 2026 — more than two years after Goldman began its inaccurate reporting and more than nine months after Goldman's own written admission of error — Citi denied Plaintiff's application for a Citi Diamond Preferred Mastercard, citing "a delinquent credit obligation(s), either paid or unpaid, was recorded on your credit bureau report" based on information from Experian. This denial is a direct and proximate result of Goldman's continued inaccurate furnishing.

**E. The 2024 CFPB Consent Order**

On October 23, 2024, the Consumer Financial Protection Bureau issued a Consent Order against Goldman Sachs Bank USA (File No. 2024-CFPB-0011), finding systemic violations of TILA, Regulation Z, and the CFPA in connection with Apple Card dispute resolution and adverse credit reporting. The Consent Order remains open and active as of the date of this Complaint.

Paragraph 62(c) of the Consent Order expressly prohibits Goldman from "[m]aking Adverse Reports before a Billing Error Notice is resolved." Goldman's continued furnishing of adverse credit information regarding Plaintiff's account — after receiving and acknowledging Plaintiff's dispute as valid — is directly inconsistent with the prohibitions and affirmative obligations imposed by the Consent Order.

Goldman's March 2, 2026 reversal, which re-confirmed adverse reporting on all three CRAs after Goldman's own prior written admission of error, is probative of willfulness for purposes of

FCRA § 1681n, as Goldman acted in reckless disregard of its obligations under both the FCRA and the Consent Order.

## V. CLAIMS FOR RELIEF

### COUNT I — Willful Violation of FCRA § 1681n

### Failure to Conduct Reasonable Investigation and Furnishing Inaccurate Information

Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

FCRA § 1681s-2(b) requires that upon receiving notice of a consumer dispute, a furnisher must: (1) conduct a reasonable investigation; (2) review all relevant information provided; (3) report the results to the CRA; and (4) correct or delete inaccurate information.

Goldman violated each of these requirements by:

- Reporting Plaintiff's credit profile as having a charge-off and bankruptcy without conducting a reasonable investigation into Plaintiff's separate status from the Co-Owner;
- Failing to correct the inaccurate reporting within 30 days of its July 9, 2025 admission — the very timeframe Goldman itself promised;
- Issuing the March 2, 2026 reversal with actual knowledge of the prior July 2025 CFPB admission, constituting deliberate repudiation of a prior finding rather than any reasonable reinvestigation;
- Continuing to furnish the adverse information to all three CRAs through at least May 2026, as confirmed by the Citi denial letter.

Goldman's conduct was willful within the meaning of FCRA § 1681n because Goldman: (a) had actual knowledge of the error through its own July 2025 admission; (b) had actual knowledge of its obligations under the Consent Order; (c) deliberately reversed a prior finding without conducting a new reasonable investigation; and (d) continued furnishing inaccurate information despite repeated disputes and documented harm to Plaintiff.

As a result of Goldman's willful violations, Plaintiff is entitled to actual damages, statutory damages of $100 to $1,000 per violation, punitive damages, and attorney's fees and costs pursuant to FCRA § 1681n.

### COUNT II — Negligent Violation of FCRA § 1681o

### Failure to Maintain Reasonable Procedures

Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

In the alternative, Goldman negligently failed to maintain reasonable procedures to ensure maximum possible accuracy of credit information, as required by FCRA § 1681e(b), when it:

- Initially reported the Co-Owner's bankruptcy against Plaintiff's individual credit profile without distinguishing Plaintiff's separate status;
- Failed to implement its own July 2025 correction commitment within the stated 30-day window;
- Failed to maintain procedures sufficient to flag the prior CFPB admission when investigating the February 2026 dispute.

As a result of Goldman's negligent violations, Plaintiff is entitled to actual damages, attorney's fees and costs pursuant to FCRA § 1681o.

**COUNT III — Additional Evidence of Willfulness: Goldman's Knowing Furnishing of Inaccurate Information**

**Probative of Willful Noncompliance Under FCRA § 1681n**

Plaintiff realleges and incorporates by reference the allegations of all preceding paragraphs.

As additional evidence of willfulness under Count I, Goldman continued to furnish and re-confirm inaccurate adverse information to TransUnion, Experian, and Equifax after its July 9, 2025 written admission that such reporting was erroneous. FCRA § 1681s-2(a) prohibits a furnisher from reporting information it knows or has reasonable cause to believe is inaccurate. While § 1681s-2(a) is enforced by federal and state agencies rather than through a private right of action, Goldman's knowing post-admission furnishing is directly probative of the willful and reckless state of mind required for statutory and punitive damages under FCRA § 1681n.

## VI. DAMAGES

### A. Actual Damages

- 64-point drop in Experian FICO Score (762 to 698), documented from April to May 2025
- Continued derogatory reporting on TransUnion, Experian, and Equifax from April 2025 through at least May 2026 — a period of over thirteen months
- Credit limit reduction by Upgrade to $1,000 and elimination of cash transfer eligibility, expressly attributed to "changes in your credit profile," dated August 23, 2025
- Denial of Citi Diamond Preferred Mastercard application on May 3, 2026, based on inaccurate Experian data furnished by Goldman
- Time, expense, and emotional distress associated with disputing the error across multiple channels over more than a year

### B. Statutory Damages

Under FCRA § 1681n, Plaintiff is entitled to statutory damages of $100 to $1,000 per violation for Goldman's willful noncompliance.

**C. Punitive Damages**

The willful nature of Goldman's March 2, 2026 reversal — made with full actual knowledge of its July 2025 CFPB admission and in the context of an active CFPB Consent Order — warrants punitive damages sufficient to deter Goldman and similarly situated large financial institutions from engaging in the same conduct.

**D. Attorney's Fees and Costs**

FCRA §§ 1681n and 1681o provide for recovery of reasonable attorney's fees and costs upon a finding of liability.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff Christina Bennani-Persechini respectfully requests that this Court:

- Enter judgment in favor of Plaintiff and against Defendant Goldman Sachs Bank USA;
- Award Plaintiff actual damages in an amount to be proven at trial, including damages for credit score harm, lost credit opportunities, denied credit applications, and emotional distress;
- Award Plaintiff statutory damages of $1,000 per violation under FCRA § 1681n;
- Award Plaintiff punitive damages in an amount sufficient to deter future willful noncompliance;
- Order Goldman to permanently delete the inaccurate Apple Card tradeline from Plaintiff's credit profiles at TransUnion, Experian, and Equifax, and to provide written certification of non-re-furnishment to Plaintiff and to each CRA;
- Award Plaintiff reasonable attorney's fees and costs as permitted by FCRA §§ 1681n and 1681o;
- Award such other and further relief as this Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## IX. EXHIBITS

- Exhibit A: CFPB Consent Order, Goldman Sachs Bank USA, File No. 2024-CFPB-0011 (October 23, 2024)

- Exhibit B: CFPB Complaint No. 250623-21767505, including Goldman's July 9, 2025 written admission of error
- Exhibit C: Credit monitoring screenshots showing credit score drop (762 to 698) and Major Derogatory Account Alert dated May 10, 2025
- Exhibit D: USPS certified mail tracking confirmation showing delivery of Plaintiff's intent-to-file letter, February 7, 2026
- Exhibit E: Apple Card Support email dated March 2, 2026 — Goldman's reversal of July 2025 admission
- Exhibit F: Upgrade email dated August 23, 2025 — credit limit reduction citing changes in credit profile
- Exhibit G: AAA Case No. 01-26-0001-2175 filing confirmation and fee demand (April 9, 2026)
- Exhibit H: Experian dispute result dated January 2026 — continued inaccurate reporting
- Exhibit I: Citi Diamond Preferred Mastercard denial letter dated May 3, 2026 — denial based on Experian data

Respectfully submitted,

Christina Bennani-Persechini
Plaintiff, Pro Se
195A Mill Street
Groton, Massachusetts 01450
Christina.bennani@gmail.com

Dated: June 16, 2026